ALEJANDRO FRANCESCHI, Plaintiff and Appellee, *v.* FIDO ANTONMARCHI ET AL., Defendants and Appellants.

No. 4261.   Argued February 21, 1928.—Decided June 28, 1928.

*Leopoldo Tormes* for the appellants.   *Agustín E. Font* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

The complaint in the present case reads in part as follows:

"2. That about the month of February of 1925 the plaintiff herein sold to the defendants a property for the price and under the conditions stated in public deed No. 20 executed on February 24 of that year before notary Angel Padró.

"3. That by reason of that transaction the plaintiff herein, Alejandro Franceschi, sold to the defendant spouses eighty-two shares of stock of the Federal Land Bank of Baltimore, indorsing in blank the stock certificate and instructing the said bank to transfer the

eighty-two shares of stock to the names and favor of the spouses here defendants, which was done, the agreed purchase price being four hundred and ten dollars.

"4. That the plaintiff has continually and repeatedly demanded payment from the defendants of the purchase price of four hundred and ten dollars, but the said sum has not been paid to the plaintiff in whole or in part by the defendants or by anybody else in their names.

"5. That the sale of this stock was for cash and therefore the sum is due, liquidated and exigible."

The defendants made a motion to strike which was overruled and later they demurred and answered the complaint, alleging as special defense that they owed the plaintiff nothing. The case went to trial. Several difficulties arose by reason of the examination of the evidence and the court finally rendered judgment for the plaintiff.

The defendants appealed to this Supreme Court and assign in their brief six errors.

The first assignment is that the court erred in overruling the motion to strike. In our opinion the complaint might have been drafted in a more condensed and precise form by omitting all reference to the sale of the farm, but the motion as worded went too far. It asked for the total elimination of the second, third and fourth averments. Anyhow, if there was error it was not prejudicial. The sale of the stock, as shown by the evidence, was related to the sale of the farm and the defendants themselves allege that the stock followed the farm property.

It is contended in the second assignment of error that the complaint does not adduce facts sufficient for a basis of the action asserted because the sale was not made to appear in a public instrument and because delivery of the thing sold was not alleged.

It is true that subdivision 6 of section 1247 of the Civil Code provides that "the assignment of actions or rights arising from an act contained in a public instrument" must appear in a public instrument.

The fact that in the complaint it is said that the sale of the stock was made by reason of the sale of the land does not necessarily mean that the statute quoted is applicable, but even if it were, the failure to comply with the requirement would not weaken the action of the creditor.

Section 1247 of the Civil Code should be construed in the light of the provisions of the two preceding sections that contracts shall be binding, whatever may be the form in which they may have been executed, provided the essential conditions required for their validity exist, and that if the law requires the execution of an instrument or other special formality in order to make the obligations of a contract binding, the contracting parties may compel each other to comply with the said formalities. Both have been construed by the Supreme Court of Spain in the sense that "the first confirms the effectiveness of the obligation of the debtor and the second establishes a privilege and not an obligation in favor of both contracting parties, but failure to make use of it does not weaken the action of the creditor." See 8 Manresa's Commentaries on the Civil Code, 657.

As regards the delivery of the stock, the allegation of the complaint is sufficient. The certificate was indorsed by the vendor who instructed the bank to transfer it to the defendants, which it did.

The third assignment of error refers to a certain exception taken by reason of the testimony of plaintiff's witness Quesada. According to the record the following occurred:

"Q.—By reason of that transaction he had made with the Federal Bank, did Alejandro have any shares of stock? A.—Yes. He had the shares corresponding to the amount of the mortgage; the borrower receives five per cent of the total amount of the loan in stock. Q.—How many shares were they? A.—Eighty or eighty-two. Q.—How much are those eighty-two shares worth? A.—Four hundred and ten dollars. Q.—Were those eighty-two shares included in the sale of the property by Chali to the Antonmarchi-Antongiorgi spouses? Defendant.—We object to the question, because a contract for the sale of a property mortgaged to the Federal Bank had been

made and our theory is that the stock follows the property because it is a right incorporated into the property pursuant to section 336 of the Civil Code which provides that "The following incorporeal things are considered as immovable from the object to which they apply: 1. The usufruct and use of immovable things. 2. Any right or obligation established on any immovable.' It is a written contract and the first clause of the deed says: 'First.—Alejandro Franceschi-Antongiorgi unconditionally sells to Fido Antongiorgi-Santiago and Ana Lucía Antongiorgi-Boagna the real property described in the first paragraph of the present document with everything attached thereto and by right belonging to him.'

"According to The Federal Farm Loan Act approved by the Congress of the United States and extended to Porto Rico in December, 1920, on page 6 of this pamphlet, fifth section, the capital Stock of the Federal Land Bank is created and its shareholders must be property owners. That is an incorporated right. There can be no other question outside of the written contract of sale wherein it is stated that the property was mortgaged at such sum of money and that the purchaser thereof becomes the debtor of the Bank, and that mortgage lien was for twenty years.

"Plaintiff.—Attorney Tormes is mistaken.

"Judge.—The motion of attorney Tormes is overruled.

"Defendant.—We take exception.

"Plaintiff.—By reason of the sale of that property was any other transaction made with the defendant spouses? Was anything else sold to them besides the property? A.—Yes, the stock."

The question objected to was not answered. We have transcribed a part of the record in regard to the incident which arose because the statement of the attorney for the appellants throws light on the merits of the action, on his theory of the case and on the weighing of the evidence. In fact the weighing of the evidence is the only thing that has made us hesitate in the decision of this matter.

The fourth assignment is of no importance. It refers to the erroneous admission in evidence of a certain letter from the Federal Land Bank expressing its opinion about the matter. Perhaps the signature to the letter was not properly authenticated, but its admission could not prejudice the defendants in any way. The district court did not decide the

case on the basis of the opinion of the bank, but by exercising its own judgment, and the same mental process is being followed by this Supreme Court.

The fifth and sixth assignments referring to the analysis of the evidence go to the bottom of the matter.

Quesada, an employee of the plaintiff, and the plaintiff in person testified that the sale was made independently of the sale of the farm property, the defendants promising to pay for the stock and later refusing. Defendant Fido Antonmarchi testified that the sale was finally agreed upon in such form that the price fixed for the farm property included the stock; that the plaintiff wanted the stock to be paid for separately and that the witness said that in that case the negotiations would fail entirely, the plaintiff then agreeing to deliver the stock with the property.

An irreconcilable conflict arises from that testimony. Somebody lied. Was it the plaintiff and his employee or was it Antonmarchi? A decision is difficult.

An analysis of the terms of the contract of sale of the real property, which not only fail to include expressly the stock, but which exclude the possibility that the price of it was included within that of the farm property, considering the manner in which the price was fixed, the position assumed by the plaintiff seems so logical that the judge is inclined to believe that the plaintiff and his employee are telling the truth. However, when the testimony of Antonmarchi is read carefully, when an examination is made of a certain liquidation made during the execution of the contract on a slip of paper where a deduction finally appears made in pencil, as if made at the last moment, of the value of the stock, and account is taken besides of the fact that from the stock certificate it appears that "if a transfer should be made of the title to the property described in said mortgage the certificate of stock shall also be transferred by means of the proper indorsement to the new owner," since the said stock is retained by the bank as collateral security for the loan,

which implies that in order to sell the property it was also necessary to sell the stock, it seems to the judge that Antonmarchi spoke the truth.

That being so, the weighing of the evidence by the trial judge who heard personally the testimony of the witnesses seems decisive for the purpose of inclining the scales in favor of the plaintiff. Perhaps the truth may be that Antonmarchi, after having promised to pay separately for the stock, changed his mind when he examined the certificate of transfer and became aware that the stock had necessarily to be transferred together with the property, as explained by witness Quesada in his testimony.

By virtue of the foregoing the appeal must be dismissed and the judgment appealed from affirmed.